UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LILY CASSANDRA ALPHONSIS,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CENTURY REGIONAL<br>DETENTION FACILITY, et al.,<br><br>　　　　　Defendants. | No. CV 17-03650-ODW (DFM)<br><br>MEMORANDUM AND ORDER<br>DISMISSING COMPLAINT WITH<br>LEAVE TO AMEND |

# I.

## BACKGROUND

On May 15, 2017, Lily Cassandra Alphonsis ("Plaintiff"), a prisoner at Century Regional Detention Facility in Lynwood, California, filed a pro se civil rights action under 42 U.S.C. § 1983. Dkt. 1 ("Complaint"). She names as defendants the Century Regional Detention Facility and Sheriff Jim McDonnell in his official capacity only.[1]

---

[1] Plaintiff mentions the Los Angeles County Sheriff's Department in the Complaint's caption, but this appears to be part of her naming Sheriff

In accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must screen the Complaint to determine whether the action is frivolous or malicious; fails to state a claim on which relief might be granted; or seeks monetary relief against a defendant who is immune from such relief.

## II.

## SUMMARY OF ALLEGATIONS

### A.    Allegations Related to Illness from Food

In November 2015, Plaintiff collapsed at dinner. Complaint at 5. "Defendants" had put milk in her food, even though the prison kitchen department knew milk would trigger anaphylactic shock. Id. Later, the "Defendants" gave her creamer which "tore through" her skin. Id. She reported this to the medical department. Id. In late February 2017, "the Defendant" gave Plaintiff a breakfast that made her sick. Id. She was sent to the clinic, and was either told that no doctor was available or saw a doctor who refused to treat her. Id. "The Defendant" removed Plaintiff from the Education Based Incarceration Program and took away credits she had earned toward her release date. Id. at 6.

### B.    Allegations Related to Court Mail

On August 25, 2016, Plaintiff handed her California Supreme Court habeas petition to "Deputy Gutierrez." Id. He sealed the envelope and indicated that he would place it in the mail. Id. Plaintiff contacted the California Supreme Court in mid-September 2016; the clerk confirmed receipt of the envelope but stated that "the documents inside the envelope seemed like a joke, as the documents were some papers that were marked Exhibit," and that he had returned the envelope to the prison. Id. Plaintiff's Complaint is hard to understand, but it appears that she claims that the California Supreme

McDonnell as a defendant. See Complaint at 1, 3.

Court dismissed her petition because letters from that court were withheld from her. Id. at 6-7. She attaches to the Complaint a summary dismissal of her habeas petition by the California Supreme Court, dated January 18, 2017. Id. at 17. Plaintiff also claims that the "Defendants" interfered with her sending and receiving mail from a Minnesota probate court, in a case where she claims that she and the late musician Prince collaborated on a song. Id. at 7-8.

**C.**    <u>**Allegations Related to Cellmate**</u>

In January 2017, "the Defendant" housed Celine Martelleur with Plaintiff. Id. at 8. On February 12, Martelleur, who had been in the news for stalking actress Jodie Foster, hit and scraped herself against the cell wall. Id. Plaintiff tried to alert deputies by pressing an alarm for help, but Martelleur attacked Plaintiff to stop her. Id. After Plaintiff pushed the alarm, Martelleur was removed from the cell. Id. That evening, Plaintiff was sent to solitary confinement and accused of attacking Martelleur. Id. at 8-9. After eleven days, a sergeant reviewed Plaintiff's side of the story and released her from solitary. Id. at 9.

**D.**    <u>**Allegations Related to Release Date**</u>

In March 2017, "one of the defendants Sergeant" looked into Plaintiff's "minute order" and told her that her release date was incorrect. Id. Plaintiff submitted a grievance, was told by "the defendant's deputy Afaro" that "the county percentage will kick in whenever it kicks in," and she was referred to "Senior Vasquez." Id. Vasquez confirmed that Plaintiff's sentence calculation was inaccurate, but Plaintiff's subsequent grievance was ignored. Id. On March 18, "the defendant" handed Plaintiff a warrant that prevented Plaintiff's release from prison. Id. On March 20, Plaintiff appeared in court and learned that the warrant was related to the incident with Martelleur. Id. After a month, that case was dismissed. Id. Plaintiff again requested a correction of her release date, but her request was ignored. Id.

**E.** **Relief Requested**

Plaintiff requests the following relief:

- "Healthy foods" and medical care;
- The ability to send mail without interference;
- Enrollment in prison programs and recalculation of her credits toward her release date;
- Actual custody credit, including relief from being "sentenced to a crime [she] did not commit"; and
- Classification as a non-violent inmate.

Id. at 10.

**III.**

**STANDARD OF REVIEW**

The Court's screening of the Complaint under the foregoing statutes is governed by the following standards: A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and afford Plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251,

1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (holding that to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court may dismiss with or without leave to amend. <u>Lopez v. Smith,</u> 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). The Court should grant leave to amend if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. <u>Id.</u> at 1130-31; <u>see also</u> <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. <u>Cato</u>, 70 F.3d at 1105-06.

///
///
///
///

Plaintiff's Complaint suffers from numerous deficiencies, as detailed below.

**A.**  *Heck*-**Barred Claims**

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the United States Supreme Court addressed "whether a state prisoner may challenge the constitutionality of his conviction under 42 U.S.C. § 1983," <u>id.</u> at 478, and held:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . . A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

<u>Id.</u> at 486-87; <u>see also</u> <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 81-82 (2005) (holding that <u>Heck</u> doctrine applies regardless of type of relief sought if success in action would necessarily demonstrate invalidity of confinement or its duration).

To the extent Plaintiff seeks to challenge her underlying conviction and sentence or the loss of custody credits, such claims are barred by <u>Heck</u>. <u>See</u> <u>Edwards v. Balisok</u>, 520 U.S. 641, 648 (1997) (holding that "claim for declaratory relief and money damages, based on allegations . . . that necessarily imply the invalidity of the punishment imposed," including deprivation of good-time credits, "is not cognizable under § 1983"); <u>Heck</u>, 512 U.S. at 487 (holding that if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . the complaint

must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated").

**B.  Lack of Cognizable Legal Theories and Insufficient Facts**

In order to state a claim under § 1983, Plaintiff must show: (1) the defendants acted under color of law, and (2) their conduct deprived her of a constitutional right. <u>Haygood v. Younger</u>, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc). Plaintiff refers to "human rights" (<u>see, e.g.</u>, Complaint at 3) but fails to invoke any cognizable legal theories with respect to her rights under the Constitution. With respect to her food and medical care, and being housed with Martelleur, she may mean to allege deliberate indifference under the Eighth Amendment. If that is the case, she has not stated such a claim. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (holding that to establish Eighth Amendment claim that prison authorities provided inadequate medical care, prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs, but inadvertent failure to provide adequate medical care, mere negligence or medical malpractice, mere delay in medical care (without more), or difference of opinion over proper medical treatment are insufficient); <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (holding that to violate Eighth Amendment, deprivation alleged must objectively be sufficiently serious and prison official must subjectively have sufficiently culpable state of mind).

Plaintiff mentions "discrimination" and the Americans with Disabilities Act ("ADA") (<u>see</u> Complaint at 6). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, a plaintiff must allege: (1) that he is an individual with a disability; (2)

that he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) that he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). Even assuming that Plaintiff's alleged allergy is a disability, Plaintiff has not alleged anything to suggest that prison officials discriminated against her because of those allergies.

Plaintiff does not explain what constitutional right she has to a particular inmate classification. See Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) ("Magistrate Burgess correctly concluded that 'a prisoner has no constitutional right to a particular classification status.'").

As for the alleged interference with and review of Plaintiff's mail: The "policy of diverting publications through the property room is reasonably related to the prison's interest in inspecting mail for contraband." Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999). Prisoners enjoy a First Amendment right to send and receive mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). Temporary delay or isolated incident of delay in mail processing does not violate a prisoner's First Amendment rights. Crofton, 170 F.3d at 961. Plaintiff alleges that her access to the courts has been interfered with, but her allegations are too conclusory and vague to address. Why could she not obtain copies of her California Supreme Court habeas exhibits and what efforts did she make to obtain them? What letters from the California Supreme Court were withheld from her, and by whom? Why does she believe that her habeas petition was dismissed for failure to respond to these "letters," rather than for some other reason? Did Plaintiff suffer any prejudice from the delay in receiving letters in her probate case? What legal mail was "withheld" in Case

No. 16-7927 (C.D. Cal.), and by whom, and what prejudice did she suffer?[2] See Complaint at 6-7.

It is unclear what constitutional right Plaintiff believes was violated with respect to her eleven days in solitary confinement following the incident with Martelleur. Her allegations do not suggest that she was placed in solitary confinement for any improper reason such as retaliation, and she was released "immediately" after an investigation. See Complaint at 9.

Throughout her Complaint, Plaintiff makes only generalized allegations against the "Defendant" or the "Defendants." Under § 1983, she must demonstrate that each defendant personally participated in the deprivation of her rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

**C.    Claims against the Century Regional Detention Facility**

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party." 42 U.S.C. § 1983. "The term 'persons' encompasses state and local officials sued in their individual capacities, private individuals, and entities which act under the color of state law and local governmental entities." Vance v. Cty. of Santa Clara, 928 F. Supp. 993, 995–96 (N.D. Cal. 1996). A local jail is not a proper defendant under § 1983. Id. at 996 ("Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality."). Thus, to the extent Plaintiff alleges that the "Century Regional Detention Facility" violated her constitutional rights, her Complaint fails to state a claim because this entity is not a "person" under §

---

[2] This case was dismissed because Plaintiff failed to submit an IFP Request or prepay the filing fees. See Case No. 16-7927 (C.D. Cal.), Dkt. 6.

1983.

**D.   Official Capacity Claims against Sheriff Jim McDonnell**

An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). Here, the entity would be Los Angeles County (the "County"). Municipalities are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. <u>See</u> <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 690 (1978). However, the County "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id.</u> at 694 (1978). Thus, the County may not be held liable for the alleged actions of its employees or agents unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." <u>Id.</u> at 690-91.

Here, Plaintiff has failed to identify any policy statements or regulations of the County, or any officially adopted or promulgated decisions, the execution of which inflicted the alleged injuries. She has also not alleged sufficient facts for the Court to "draw the reasonable inference" that the County has a governmental custom of committing the illegal acts alleged. The Court therefore concludes that Plaintiff has failed to allege sufficient facts for the Court to "draw the reasonable inference" that the County has a custom of engaging in the kind of illegal conduct that Plaintiff alleges occurred here. <u>See</u> <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper

custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

**V.**

**CONCLUSION**

Because of the pleading deficiencies identified above, the Complaint is subject to dismissal. Because it appears to the Court that some of the Complaint's deficiencies are capable of being cured by amendment, it is dismissed with leave to amend. See Lopez, 203 F.3d at 1130-31 (holding that pro se litigant must be given leave to amend complaint unless it is absolutely clear that deficiencies cannot be cured by amendment). If Plaintiff still desires to pursue her claims against Defendants, she shall file a First Amended Complaint within thirty-five (35) days of the date of this Order remedying the deficiencies discussed above. Plaintiff's First Amended Complaint should bear the docket number assigned in this case; be labeled "First Amended Complaint"; and be complete in and of itself without reference to the original Complaint or any other pleading, attachment or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is strongly encouraged to utilize.

**Plaintiff is admonished that, if she fails to timely file a First Amended Complaint, the Court will recommend that this action be dismissed with prejudice for failure to diligently prosecute.**

Dated:  June 21, 2017

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge